Good morning, Your Honors. Kirk Hansen for the appellant, Isaias Hernandez. Your Honors, I'd like to start by just focusing the Court on the actual statute itself. It's Labor Code section 226A. It's pretty clear in the statute that an employer in California must provide its employees with a written and accurate wage statement that lists correctly all the rates of pay and each hour worked at each rate of pay. I'm not aware of any case, federal or state, that says it's okay for an employer to list incorrect information in a pay stub or any case that says it's okay to list incorrect information in a pay stub as long as some information in a pay stub is correct. What's incorrect? Well, in this particular pay stub, there's two things that are incorrect. The first thing is how this pay stub reflects overtime pay. Now, what a pay stub should do is list the single rate of overtime pay plus the hours worked. No, what I was asking was any information on the slip, so far as you're concerned, any information that's incorrect, and I guess your answer has to be no. I'm sorry, Your Honor, I don't understand the question. You said it must be correct information. What you've got here is somebody who just didn't understand it and didn't... He didn't understand it, but it wasn't that it wasn't understandable. A person looking at it could understand exactly what happened, couldn't they? Well, Your Honor, no, I disagree. You're correct that my client didn't understand it, but if a reasonable person is looking at this pay stub... Well, I guess I'm worried about even that statement. You say he didn't understand it. However, I looked at what he said in his deposition, and he doesn't say he doesn't understand the statement. Well, actually, he said he was confused by the way statements are. Well, he does say he's confused. He doesn't say he doesn't understand them, and then in his deposition he identified the overtime hours worked. He knew how to determine them, even if they were listed twice, and he knew the overtime rate was time and one-half. Well, time and one-half is the formula. It's not the rate, Your Honor. Well, I understand, but he knew the overtime rate was time and a half, right? He knew it would be time and a half of his regular rate. Right. By looking at the pay stub itself, he didn't know what his overtime rate was because it's not listed. They take the actual overtime rate, which is not on the pay stub, and they split it into two separate line items on the pay stub, and they give each line item a separate label. One's called OT base 100%. It has the next column over it has the number of overtime hours worked, and then it has an actual amount earned at that rate. Then below that on the same pay stub, the next line item down, it says OT prem 50%. It restates the overtime hours again at the same number. Did your client ever argue that he used the Internet or a helpline to understand this? Well, I think he said – Did he ever do that? I don't believe he did that. He did look at his calendar. Is there anything in the brief that indicated he did that? No, Your Honor. Does your client ever ask anyone to explain the statement to him? I believe there was an instance where he had a question about payroll, and he did take it to his supervisor for an answer to a question. You'd agree with me, I guess, that just because one has to confirm what is there, that's not enough to make your claim. I think if Your Honor is asking about the injury here, if an employee has to look outside the four corners of a pay stub to figure out the rates, for example, the Internet or a company's intranet system, which is in the record here, they do have a system here where employees can go outside their pay stub, get on a computer and go into Coca-Cola's system and try and find an explanation for the paycheck. But the statute at issue here says the information has to be accurate on the four corners of the pay stub. Wasn't it accurate? No, it was not accurate. What's the inaccuracy? I had a hard time even knowing what he was complaining about when I looked at the pay stub. And I thought, well, I guess if you twist it far enough, you can be confused. Well, there's no twisting here, Your Honor. The pay stub, under two separate line items for overtime, there's two separate labels. Not two separate line items for overtime. Yes, there is. In this state? No, there's two separate line items for overtime. The first one is OT base 100 percent and goes all the way across. And then the one below that is OT base 50 percent. And this pay stub lists double the amount of overtime that the employee actually works. So that's not correct. And it lists incorrect overtime rates. Is there anything that anybody who could do simple arithmetic not understand on that pay stub? Well, here's the problem. If they know the formula, if they know that the overtime hours are stated twice on the pay stub, there's nothing on the pay stub that tells the employee how to interpret the pay stub. It doesn't say, oh, by the way, employee, your overtime hours are stated twice, and the overtime rate's not on here. Probably because they thought you didn't need to. A reasonable person looking at it would see it. Well, I disagree, Your Honor. Here's the problem. You look at the first category, OT base 100 percent. What does 100 percent mean? We're going to decide this case on the law and on what we're supposed to look at. But when I looked at the pay stub, I expected to be confused. Or I expected at least for the stub itself to be confusing. It had a limit for the full time and then had another statement for what? Well, it had a regular hourly rate and the correct hours. And it had two line items below that. It's the same hour overtime worked, but they split that same hour into two separate line items, both of hours worked, of the rate and the amount of pay earned, and actually different labels for each line item. That's where the problem is. And to address one of the issues, you know, the lawyers in the court have been steeped in, you know, hundreds of pages of briefing. They know the cases. An employee doesn't get the benefit of that. So none of us here stand in the shoes of the lawyer. Because he gets the same kind of pay stub every time he gets a paycheck. Right. But he doesn't get, you know, appellate briefs. He doesn't get case law to tell him, you know, what the rules are for pay stubs. And he doesn't get someone to tell him how Coca-Cola, how Coca-Cola's software program spit out the overtime hours or the rates. That's the problem. And nowhere on this pay stub is the actual overtime rate listed. Remember, the statute says the rate and the hours have to be accurate. Well, we don't have accurate hours. They're listed twice. That's incorrect. Can I ask you just to address the Morgan case? I guess until reading that case, I might have been inclined to agree with you that as a highly technical matter, this what do you call it, pay stub or wage statement, doesn't quite comply with the statute. But I guess I read the Morgan case as saying that, well, as long as the employee just doing a little simple math can figure out the accurate numbers, then sort of no harm, no foul. Well, in the Morgan case, it was factually quite different. In Morgan, there was a single hourly rate and a single number of hours work that corresponded to that. There was a single overtime rate and a single number of overtime hours corresponding to that. That information was correct. The only thing that wasn't actually listed on the pay stub was total hours. But all you had to do is add those together. And here it just seems to me, I agree with you, it's a factually different situation. But the legal principle that the court articulated seems to apply here with equal force because doing a little simple math, the employee obviously can figure out. I mean, I'm just looking at the pay stub that's in the district court's order. You know, 40 hours at regular time, .5, .5 listed twice. But then the total given at the bottom is 40.5. So the employee knows, oh, okay, well, I didn't work 41 hours. I only worked the .5 overtime hours. And if I just do a little simple math, I can see, oh, yeah, I see. It just seems to me that the legal principle would cover this case. Well, Your Honor, I think the problem with that is that if an employee actually adds up all the hours worked, the regular hours and the overtime hours listed twice, the employee will get one number. And if the employee compares that number to the total hours worked number at the bottom, it's a different number. The number at the bottom, which is just total hours, it doesn't break out, you know, what component of that number is regular hours versus overtime hours. So what you have on this pay stub is a conflict. If you do the math, you have a conflict in the math. Are you talking about the pay stub that's in the district court's order? Correct, yeah. Okay. I mean, help me understand how in the world somebody could not figure out, looking at that thing, that I only worked a half an hour of overtime. Okay. Here's how you do it. You take – there's a column that says hours and units, and the first number in that column is usually 40 for the regular hours. Okay. That if any overtime is worked, that's the next two items down. Okay. Those overtime hours are stated twice. So if you add up the regular and the overtime hours stated twice, you get a number. 41. Yeah, 41. If you do the math, 41. But it tells you, no, employee, you only work 40.5. Right. And so if you're an employee, and, again, you don't have the benefit of all this briefing, how do you know that when you add – like, for example, using the Morgan case, when you added the numbers up, you got the correct number in the Morgan case, between the regular hours and the overtime hours. Here, if you do that, like Morgan, you get the wrong number. And if you take that number – because the overtime is stated twice. So if you add up all the numbers in the column, you get the wrong number of total hours worked, and it doesn't match the number at the bottom. The total hours worked here is accurate. At the bottom of the pay stub, it would be accurate. Correct. Right. So then you know, oh, well, I have to subtract 0.5. Obviously, I didn't work double the number of overtime hours, as this thing is suggesting. And if I kind of just do – oh, I see. They're just giving me – you know, they're breaking out the rate for that one half hour into two lines. Well, the employees – no one tells the employees to do that. That's the problem. It's not on the pay stub. In other words, no one tells the employee, oh, don't add up both line items for overtime, because one of them is actually you didn't work it. Likewise, it doesn't tell them that, oh, I know there's two labels for overtime, and there's two different rates for overtime, but it's really the same hour of overtime you worked. There is a single rate, and now you've got to do the math to figure it out. How do you think it should have been done, to be clear? What do you say it should have been? The way it should have been done was the way Coca-Cola did it up to 2006. They did it the right way. They had regular hours numbers, 40, whatever it would be, times the regular rate and the total. And right below that, they had the actual overtime rate, time and a half rate, the actual number of overtime hours, and the total. That's how it was done before. Then they changed – I'm not sure why – they changed the format in 2006. I don't understand why either. This seems like a dumb way to present the information, but I don't – in light of Morgan, I don't see that it's a violation of the statute. Well, again, remember, Morgan, there was nothing incorrect on the pay stub. Everything was accurate. So there are cases that hold it where everything on the pay stub – There's nothing incorrect in that statement. It just says you got six – I did the 6.78 amount, but you just got the .50 multiplied by the rate, and you got .50 multiplied by half that rate. That's not inaccurate. Well, the math on the pay stub issue here, I'm not saying is inaccurate. In other words, the way it's being calculated to get the total amount for pay, I'm not saying that's inaccurate. But what we're saying is that's not the purpose of the statute. Labor Code 226 requires the employee to be able to look at the pay stub quickly and see, okay, here's my overtime rate. What does it say quickly? What does it say quickly? Well, it's – I'm talking about the recent clarification to Labor Code 226, SB 1255. I am, too, but I guess I don't find any quickly. I see an accurate itemized statement in writing, but I didn't ever see any quickly. Yes, Your Honor. The word is actually promptly. So when an employee gets a pay stub, the employee has to be able to determine from the pay stub alone any of the nine pieces of information. Okay, so the way the statute reads is, an employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide accurate and complete information and the employee cannot promptly and easily determine from the wage statement alone the specified information. And then it goes on to define what that means. It says, for purposes of this paragraph, promptly and easily determine means a reasonable person would be able to readily ascertain the information without reference to other documents or information. Well, that's what I got was readily ascertain without going to other documents. You did talk about Morgan. What about McKenzie? Well, McKenzie is on point with the issue raised in this case. In McKenzie, FedEx did the same thing. In other words, FedEx, instead of listing a single overtime rate, FedEx broke it down to the same ratio here. It's basically a regular rate and half a regular rate ratio, and they did separate labels for the overtime. One was called overtime. One was called, I think, overtime premium. Does it help you, McKenzie? Absolutely. It's on point. But they gave the total hours. They gave the total hours. But the court's analysis of McKenzie was not tied back to that factor. In other words, there was a separate part of that decision where the court analyzed the violation of the Labor Code section 226A9 specifically as to whether FedEx had listed the correct number of overtime hours and whether it listed the correct rate. And the court said, no, it did not, because FedEx, like Cook here, doubled the overtime hours to make the math work. And there was no way for the employee to figure out looking at that thing and looking at the wait statement itself that that was not the case. And here you can figure that out pretty easily, it seems to me. Well, I disagree on that. If the court is saying that the employee can figure it out easily because there's a total hours work at the bottom, again, I think it's kind of apples and oranges, because when you do the math and add up the actual line item hours, has the labels for the rate, has rate numbers and hours, the numbers don't add up. The numbers conflict. Okay, well, I'm not supposed to just go straight down and add up. I have to analyze a little bit. Okay, there's listing two separate rates for that 0.5 hour. Yeah, but what it also tells the employee is the numbers are conflicting. If I'm the employee, how do I know which number is right? How do I know, well, where's the error? Is the error in the whole number or is it in the more detailed breakdown where the pay sub is actually telling me the hours at work and telling me the rate at work? How much are you going to translate that? You said it's conflicting. What's conflicting? Well, if you – I'll take any one of Mr. Hernandez's pay subs because they're all set up the same way where any overtime is work. If you add up the columns where the overtime rates are broken down, hourly rate, the regular rate, and then the two overtime rates, if you add up the hours in that column, it's not going to give you the right number of hours work because they add in overtime twice. But if you do the math, you get one number which will not match the number at the bottom where Coke is saying that's the total hours you work. So if you're an employee, again, you've got to stand in the shoes of the employee here. How does the employee know which number is right? We're trying. We're trying. I know. You're asking me the questions. I understand. It looks like anybody looking at this would say he works – I worked 46.78 hours. I got paid the hourly rate for 48 hours, and then overtime, I got paid the time and a half. So I got 100 percent for those hours and 50 percent for those hours because I'm getting paid time and a half. If he was getting double time, it might have said overtime base 200 percent, and you wouldn't have had to go to the second number. But since it was a half, 50 percent, you went twice. If you were getting double time, they could have conceivably just said overtime base rate 200 percent because you were getting double. But he wasn't. He was getting time and a half. So he was getting time and a half. They showed that he was getting the 50 percent. It's so clear that I had a hard time trying to figure out what confused him. Your Honor, here's why it's not clear. Because if the first line of overtime, which is, again – Well, it might not be clear to him. I'm not suggesting it's not. But to the average reasonable person looking at it, it's pretty clear. Well, I disagree, Your Honor. If the average reasonable person is looking at this paystub and looking at the column that says OT base 100 percent, 100 percent, the word – I mean, the number 100 percent is wrong because it's not 100 percent of the overtime. No, it was paid. It's actually 66 percent. It said the base was 100 percent and then base 50 percent. But what is – Premium. Premium 50 percent. But there's no such thing in the labor code as OT base. It doesn't exist. There's time and a half and there's double time. All right. Thank you. I think we've heard your argument. All right. Thank you, Your Honors. May it please the Court, Your Honors. My name is Jennifer Robinson on behalf of the Appley BCI Coca-Cola Bottling Company. My co-counsel, Richard Romm, also representing Applin BCI. What 226A requires is that the employer show certain information. Show means to make it evident and apparent. In this case, BCI showed the overtime rate in two component parts. Overtime base 100 percent. Overtime premium 50 percent. Totaling those two components together, you get the overtime rate of 150 percent or what we often refer to as time and a half. This case is squarely on point with the Morgan case in which the court of appeal held that there is no requirement in 226A which says you can't show the requisite information in component parts. What BCI did in this case was showed the overtime in two component parts and then showed the applicable number of hours worked at each of those corresponding rates. So, for example, in the wage statement that we've been discussing, the one that shows 6.78 hours of overtime worked, it shows 6.7 hours of overtime base 100 percent. 6.78 hours of overtime worked at overtime premium 50 percent for a total shown right at the bottom of 6.78 hours of overtime 150 percent or overtime time and a half. Right within the four square corners of Morgan is where this case lies. We have shown the information in component parts. Just out of curiosity, what is the reason for displaying it in this way? Your Honor, in this case in 2006, the company switched the type of payroll system they had and that was how the payroll system showed the overtime rates. That's not a very good explanation, but let me just put it in these terms. As Judge Ferris was saying, why not just on that first line under hourly pay where it says OT base 100 percent, why not just change that to 150 percent and then just make the numbers go across and just have a single line for the one, you know, have one entry for the 6.78 hours? I just don't understand why this is somehow better in terms of a presentation of the information. Well, Your Honor, it is not, 226 doesn't require that we show overtime or the required elements in the best way or even the better way. What it requires is that we show the elements and here we showed them in 150 percent. I just want to ask a simple question, which it doesn't sound like you have an answer to. Why do it this way? This seems just calculated to confuse as opposed to, you know, enlighten the employee. I just wonder, what's the reason for the change? I would also say, Your Honor, remember we don't get to confusion unless and until there is first a finding that BCI did not comply or substantially complied. I'm not resisting your singularity. I just, I was curious and I just am puzzled that you don't seem to have an explanation for why. Wouldn't the simple answer be, though, that he might be paid time and a half. Sometimes the overtime, well, I don't know if that's true, but I know from working that sometimes you get double time. Sometimes you get time and three quarters. So that's what they're showing. That's right, Your Honor. And in this particular case, I'm sorry if I didn't address your question properly, employees have many sorts of different rates of pay, including shift premiums, for example, which are not additive, where somebody might get a 20-cent increase or extra pay for a particular shift that they work. Here, because of the different rates of pay, which are not evident in the record in this case, because Mr. Hernandez did not qualify for other non-additive rates, but in this case it shows overtime base 100 percent and overtime premium 50 percent. Tell me, I asked counsel to explain why McKenzie better fit his case, and he attempted to do that, but there were some things that weren't quite exactly. Why isn't McKenzie a case I ought to follow to suggest your argument is just wrong? Well, Your Honor, in the McKenzie case, what the court spent almost all of its time doing is analyzing the total hours worked portion requirement of 226A2. And the McKenzie court distinguished Morgan from the facts in McKenzie and held because you couldn't simply sum up the numbers in McKenzie like you could in Morgan, and the McKenzie court, the McKenzie case did not list the total, then there wasn't necessarily total hours showed. However, the McKenzie court, and may I also bring to your court's attention, which I know you know, the McKenzie case is not binding on this court. It's a district court. It is not the Morgan case, which is a California court of appeal. But in the McKenzie decision, the section in which they discussed 226A9, all applicable hourly rates and the corresponding number of hours for each, the McKenzie court didn't distinguish Morgan. It didn't mention Morgan. It simply said without analysis that breaking the overtime rate into two component parts violated A9. To the extent that the appellant is claiming that the McKenzie case stands for the proposition that requisite information of 226A can't be shown in component parts, then Morgan forecloses that argument. Additionally, Judge Fees in his decision, York v. Starbucks, four months after the McKenzie case, he says component parts are acceptable to show the requisite information in 226. And that, Your Honor, is why McKenzie should not be followed in this case and, in fact, is not square on point in this case. The other answer I suppose you could give is that sometimes you get an hourly rate of pay. Then sometimes the midnight shift gets a bonus. They get paid a little more because they worked less desirable hours. So you might reasonably show so many hours, so many hours you worked, so many hours of pay, so many hours of regular pay and so many hours of the raised pay because of the working night shift or working. There are any number of reasons why you'd use the parentheses, you'd use the two columns. The question, though, is when you look down the bottom line and you see that, yes, 46.78, and that's the number of hours I worked. I just have a hard time getting confused to see what the confusion is on this pay stuff as it's set out. Well, Your Honors, that is how the district court in this case distinguished the McKenzie case. It said that it made it clear that it clearly showed the total number of hours worked, the number of overtime hours worked, and the overtime rate in two component pieces. So I understand the answer that you gave before. Is it the case that on that second line, OT base 100 percent, and then it says the rate here happens to be the same as the hourly pay rate? That's correct. You're saying that sometimes overtime would be calculated at a different rate than the regular hourly rate? That's the need to break it out into these component parts? For Mr. Hernandez himself, the plaintiff in this case, he did not have additional nonadditive hours like a shift differential. In the wage statements that are in the record here, all of his wage statements that are relevant had the OT base 100 percent and the OT premium 50 percent. And they all had the hourly pay was the same as the OT base pay. But you're saying that for some employees that those numbers would be different? That's the reason why you need to. In other words, I was saying, well, why not just say OT base 150 percent, right? And you're saying because then maybe it would be confusing because you could actually be using the 150 percent of what? It might actually be a different number than the normal hourly rate, is that? And, Your Honor, that's precisely the argument that the plaintiff made in the Loud case, the Loud versus Eden Medical Center, where the company provided the overtime rate in one single line, and the plaintiff sued her employer and said, but I don't know how you calculated. You didn't show me all the various components that went into calculating the overtime rate of pay. And the district court rejected that argument and said, we don't have to explain how we get there to you. We simply need to show you your overtime rate. And that's what we did. Again, in order to prevail on this claim, plaintiff needed to show, to prove that BCI did not show the applicable rates. Once this court affirms the district court's ruling that BCI did show the applicable rates and the hours worked at each of the corresponding rates, then the analysis should be over. Summary judgment should be affirmed in favor of defendant, in favor of Appley on both of the causes of action. If this court were to find that BCI did not comply with the law, then we would ask that this court affirm the judgment that BCI substantially complied with the law. And, Your Honor, you made a comment about hypertechnicality or technical compliance earlier. In this case, understand that the appellant is seeking nearly $20 million in PAGA penalties for just the year prior to filing the lawsuit, and he's seeking an additional nearly $20 million in statutory penalties just for the period of time of the year before filing the lawsuit. Here, substantial compliance is the correct standard, and the district court found that we substantially complied with the statute. Substantial compliance is the correct standard when the reason for the statute has been met. And here the reason was so that an employee can determine that he or she was paid at the proper rates for all hours met. We submit to you, Your Honors, that BCI's wage statements both comply and substantially comply with 226A. To the extent that this court is interested in hearing a little bit about the injury component, that's the first place where confusion would ever come into question whatsoever. And in this case, the plaintiff, the appellant, Mr. Hernandez, was very, there was no confusion. He said at ER-222, I understand overtime to be time and a half or base and a half. At ER-227, he said, I understand overtime to be 150% of my normal rate. At 369, he said, I understand overtime to be one and a half. At 383, he said, I understand that the number's $23.93 plus $11.50, plus $11.50, plus $11.50. Equal 150% of my normal rate. At ER-389, he said, by looking at this wage statement, I understood I worked a little more than six hours, a little less than seven hours in overtime. He said, I don't have any confusion at ER-392. I understand my hours. I don't have a problem with my hours. I expected to see a full amount instead of my overtime rate broken up into two components. So even Mr. Hernandez here did not suffer confusion. He is objecting to the formatting of the wage statement, saying he expected to see his overtime rate broken up. He's objecting to the fact that the number's $23.93 plus $11.50, plus $11.50, plus $11.50. And appellant's counsel has discussed the amendment to 226A. That amendment came into play eight months after judgment was entered in this case. Plaintiff's counsel, appellant's counsel did not address in his moving papers why the amendment should be applied to him. He did not raise his argument until his reply brief. But that being said, even if the amendment were retroactive, you have to show that information is both missing and that the missing information can't be easily ascertainable from the wage statement itself. Here it is clearly ascertainable that he worked 6.78 hours of overtime, that he worked a total of 46.78 hours that week, and that his overtime rate was broken into two components of overtime base 100 percent and overtime premium 50 percent. With that, I'll submit, Your Honors, unless you have additional questions. Thank you. Thank you. Appreciate it.
judges: Farris, Smith, Watford